UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-006 (DWF)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | DEFENDANT'S SENTENCING |
| v. ) | POSITION |
| ) | |
| JEROME FLETCHER HORTON, JR., ) | |
| ) | |
| Defendant. ) | |

Jerome Horton, Jr., is twenty-five (25) years old. He has no countable adult criminal history; the only incident at all was a $280 misdemeanor theft of clothing case involving employees of a department store, and this case was dismissed after spending one year in court diversion. His only juvenile history occurred in 2013 when he was seventeen years old. Mr. Horton has been gainfully employed through much of his adult life, but it is clear that he is still searching for his true vocational trajectory. In most ways, he is like any other twenty-five year old growing up during this day and age when, it seems, adolescence is being postponed further and further into adulthood. Although he is still finding his way, Mr. Horton has lived long enough to establish that he is not inherently prone to being disruptive, not inherently prone to criminal activity, and not inherently prone to participating in street crime or street violence.

Rather, this case is about a young person who agreed to purchase firearms for other people who were prohibited from doing so, without initial regard for the consequences of

doing so. That at least one of the firearms he purchased on behalf of someone else turned up at a crime scene after being used certainly highlights the policy reasons why the straw purchasing of firearms presents a public safety risk, and Mr. Horton was immediately dismayed to learn his role in facilitating that incident. Although Mr. Horton had naively believed initially that he was not responsible for what others did after their transactions were completed, he now knows that this was merely an illusion and he is rightfully mortified that he may have played a meaningful role in the injures or even deaths of other people, whether he knew them personally or not.

Mr. Horton completely understands that he committed a serious crime, he fully accepts that punishment is appropriate, and he expects some term of imprisonment to be imposed. He further understands that this is a particularly sensitive time for his kind of error of judgment. However, the conduct here appears so anomalous and is impossible to repeat now that Mr. Horton is himself a prohibited person that a significant variance from the advisory guideline range is warranted. His remorse is real, and these are more than mere words designed to elicit a sympathetic (judicial) ear.

This case represents the first adult conviction of Mr. Horton's life, and his first felony conviction. He is determined to make it his last. Throughout the pendency of this case, Mr. Horton has reflected deeply on the trajectory of his life. He is an intelligent, well-intentioned person who knows he is better than the offense conduct suggests. Under separate cover, defense counsel will provide the Court with additional materials from Mr.

Horton, and he trusts that his own words to the Court will demonstrate the insight he has gained and his commitment to a different, better path.

## I.     Introduction

Jerome Horton, through undersigned counsel, submits the following position paper regarding sentencing. On March 3, 2022, Mr. Horton appeared before the Court and entered a guilty plea to a single count of making a false statement during the purchase of a firearm, in violation of 18 U.S.C. § 922(a)(6). This plea was entered pursuant to an Information and a plea agreement between Mr. Horton and the government, a copy of which has been filed with the Court. That plea agreement contemplated an advisory sentencing range of 46-47 months, and the Presentence Report (PSR) recommends a total adjusted offense level of 23, a criminal history score of I, resulting in an advisory range of 46-57 months.

Mr. Horton will supplement this filing with a more specific sentencing request under separate cover once a date for his sentencing hearing is set by the Court in order to provide the Court with the most up-to-date basis as possible.

## II.    Sentencing Factors Pursuant to 18 U.S.C. Section 3553(a)

### A.    Legal Background

The reigning guidance for federal sentencing, 18 U.S.C. § 3553(a), et. seq., calls for the consideration of the Sentencing Guidelines themselves,[1] and a host of other factors including the nature and circumstances of the offense, the history and characteristics of the

---

[1] 18 U.S.C. § 3553(a)(4)(A)(I) (2012).

offender,[2] and what will best advance his or her rehabilitation.[3] Although the Sentencing Guidelines punish an intersection of offense and prior record alone, federal sentencing law, of which they are but a part, recognizes that courts are ultimately sentencing unique human beings.

The details of these considerations are guided by one overriding principle and an important congressional finding. Congress prescribes that the sentence should be the minimum necessary to accomplish the enumerated purposes of sentencing, namely correction and rehabilitation.[4] Significantly, Congress has found that "imprisonment is not an appropriate means of promoting correction and rehabilitation."[5]

Further, the Supreme Court has empowered district courts with the discretion to sentence outside of the recommended guideline range. *United States v. Booker*[6] and its progeny give sentencing courts the discretion to make individualized sentencing decisions based on the individual facts of each case. It also gives courts more discretion to impose sentences outside the sentencing guidelines' recommendation if the specifics of the case justify such a result.

Since *Booker*, the relationship between a sentencing court and the Sentencing Guidelines has evolved well beyond the "advisory" label given to the guidelines by the

---

[2] 18 U.S.C. § 3553(a)(1).
[3] 18 U.S.C. § 3553(a)(2)(D).
[4] 18 U.S.C. § 3553(a).
[5] 18 U.S.C. §§ 3553(a)(2)(D), 3582(a).
[6] *Booker*, 125 S.Ct. 738 (2005).

Supreme Court. The Supreme Court has elaborated on the discretion a district court has to make sentencing decisions based on the facts of each case and broader policy questions.[7] The practical reality is that a sentencing judge, in evaluating each unique person facing sentencing, along with facts of each case, may "reject (after due consideration) the advice of the Guidelines."[8] Further, the sentencing court may vary from the advisory guideline range based solely on policy considerations, including disagreement with the policy underlying the guidelines in a case.[9] This is true "even in the mine-run case."[10]

The sentencing procedures set forth by the Supreme Court make clear that the recommended guideline range is just that: a recommendation. The *Gall* Court rejected the notion that extraordinary circumstances are required to justify a sentence outside the Guidelines range.[11] Ultimately, a sentencing judge must "impose a sentence sufficient, but not greater than necessary."[12]

When considered together, the (1) unfettered sentencing factors, (2) statutes' call for a sentence no longer than necessary, and (3) unique facts of this case, all support a significant variance below the advisory guideline range of 46-57 months.

---

[7] *Spears v. United States*, 129 S.Ct. 840, 843–44 (2009); *Kimbrough v. United States*, 128 S.Ct. 558, 575–76 (2007); *Gall v. United States*, 128 S.Ct. 586, 597–98 (2007).
[8] *Kimbrough*, 128 S.Ct. at 577 (Scalia, J., concurring).
[9] *Id.* at 570.
[10] *Id.* at 563.
[11] *Gall,* 128 S.Ct. at 595.
[12] *Kimbrough*, 128 S.Ct. at 570 (citing 18 U.S.C. § 3553(a)).

### B.     Mr. Horton's Post-Offense Conduct Merits a Variance from the Advisory Guideline Range

Once Mr. Horton was indicted in federal court, he readily and quickly admitted his guilt. He did so because he understood that he made a mistake and should be held accountable. Mr. Horton was not interested in prolonging this matter beyond the minimum necessary. Mr. Horton accepts responsibility for his actions, completely and unequivocally.

To that end, he declined to file <u>any</u> pretrial motions, neither challenging the admissibility of any evidence proffered by the government nor insisting that the government be ordered to honor its various disclosure obligations. Mr. Horton also agreed to plead guilty pursuant to an Information, explicitly allowing the government to conserve its time and expenses by forgoing the typical and generally mandatory grand jury indictment process. Mr. Horton has done everything he can procedurally to facilitate his own prosecution, and such acceptance of responsibility should be credited.

Furthermore, Mr. Horton has remained out-of-custody since being released on October 21, 2021, just two days after his arrest on the instant offense. He was initially released to a halfway house where he resided for close to four months. While there, Mr. Horton was a model resident and fully complied with both all court-mandated conditions of release and the rules of the particularly facility where he was placed. Given his extremely positive adjustment to supervision, Mr. Horton was permitted to leave the halfway house in February 2022, and he has been living with his sister since. Mr. Horton was given a number of release conditions, including drug testing, travel restrictions, an employment requirement, and others. He has been fully compliant throughout.

Accordingly, given Mr. Horton's quick acknowledgement of his error and how he has comported himself during the pendency of this case, his case merits a variance from the advisory guideline, and he respectfully suggests a significant variance would be appropriate when adding this particular ground to others previously discussed.

### III. Conclusion

Mr. Horton respectfully requests that the Court consider a significant variance below the advisory federal sentencing guideline range of 46-57 months. Such a sentence would account for all the statutory sentencing factors and would reflect a sufficient, but not greater than necessary, sentence.

As mentioned earlier, this filing will be supplemented once a sentencing hearing date has been established by the Court. This supplemental pleading position will detail the remaining 3553(a) factors in light of the most up-to-date information available at that time.

Dated: June 6, 2022                    Respectfully submitted,

*s/James S. Becker*

_____
JAMES S. BECKER
Attorney ID No. 388222
Attorney for Mr. Horton
107 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415